# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **SEAN GORECKI**, an individual, | ) | **Case No.** 1:17-cv-03036 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Trial by Jury Demanded** |
| | ) | |
| **MCDONALD'S CORPORATION**, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

## COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY PENALTIES, AND OTHER EQUITABLE RELIEF

Plaintiff, Sean Gorecki, ("Plaintiff"), by and through his attorneys, for his complaint against McDonald's Corporation, states as follows:

## INTRODUCTION

1.     Plaintiff is a blind and visually-impaired person who requires screen-reading software to read website content using his computer and on his iPhone.

2.     Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200.  Some blind people who meet this definition have limited vision.  Others have no vision.

3.     Plaintiff brings this civil rights action against Defendant MCDONALD'S CORPORATION ("Defendant" or "McDonald's") for its failure

to design, construct, maintain, and operate its website, McDonalds.com (the "website" or "Defendant's website") to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired people.

4.     Plaintiff further brings this civil rights action against Defendant for its failure to design, construct, maintain, and operate its mobile application (the "Mobile App" or "Defendant's App") to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired people.

5.     Defendant's denial of full and equal access to its website and Mobile App, and therefore denial of its products and services offered thereby, is a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA") and California's Unruh Civil Rights Act ("UCRA").

6.     Because Defendant's website, McDonalds.com and its Mobile App are not fully and equally accessible to blind and visually-impaired consumers in violation of the ADA, Plaintiff seeks a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures so that Defendant's full and website and Mobile App will become and remain accessible to blind and visually-impaired consumers, including Plaintiff.

## JURISDICTION AND VENUE

7.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III

of the ADA, 42 U.S.C. § 12181, *et seq.*, and 28 U.S.C. § 1332.

8.   This court has supplemental jurisdiction over Plaintiff's non-federal claims pursuant to 28 U.S.C. § 1367, because Plaintiff's UCRA claims are so related to Plaintiff's federal ADA claims, they form part of the same case or controversy under Article III of the United States Constitution

9.   This Court has personal jurisdiction over Defendant because it is deemed a resident of the State of Illinois and it conducts and continues to conduct a substantial and significant amount of business in the State of Illinois.

10.   Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b)(1) because McDonald's resides in this District and this Court has personal jurisdiction over Defendant.

## PARTIES

11.   Plaintiff, at all times relevant and as alleged herein, is a resident of California, County of Los Angeles. Plaintiff is also blind, visually-impaired, handicapped person, and a member of a protected class of individuals under the ADA, pursuant to 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq.*

12.   Plaintiff is informed and believes, and thereon alleges Defendant MCDONALD'S CORPORATION is one of the world's largest restaurant chains, and its headquarters are located in Oak Brook, Illinois.

13.    Defendant's website and Mobile App offer an array of goods and services including restaurant locators, menu item descriptions, nutritional information, special offers and coupons, and many other benefits related to these goods and services.

14.    Defendant's website and Mobile App are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7) because McDonald's website and Mobile App are, or are part of, a "sales or rental establishment," and a "service establishment."

15.    Defendant has been and is committing the acts or omissions alleged herein in Los Angeles County of the State of California which caused injury, and violated rights prescribed by the ADA and UCRA, to Plaintiff and to other blind and other visually impaired-consumers. A substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in California.  Specifically, on several separate occasions, Plaintiff has been denied the full use and enjoyment of the facilities, goods, and services of Defendant's website and Mobile App in Los Angeles County.

16.    The access barriers Plaintiff encountered on Defendant's website and Mobile App have caused a denial of Plaintiff's independent, full and equal access multiple times in the past, and now deter Plaintiff on a regular basis from accessing Defendant's website and Mobile App.

## THE AMERICANS WITH DISABILITIES ACT AND THE INTERNET

17.     The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike. As an essential tool for many Americans, when accessible, the Internet provides individuals with disabilities great independence.

18.     Blind persons are able to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer or smart-phone screen.  This technology is known as screen-reading software and is also commonly referred to as a screen reader.

19.     Except for legally blind individuals whose residual vision allows them to use magnification, screen-reading software is currently the only method a blind person can fully and independently access the internet.

20.     Unless websites and mobile apps are designed to allow screen-reading software users to navigate Internet content by way of the keyboard or through moving their fingers over the smartphone screen, blind and visually-impaired persons are unable to fully, equally and independently access websites, mobile apps and the information, products, and services contained therein.

21.     Blind and visually-impaired users of Windows operating system-

enabled computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately.

22.     Job Access With Speech, otherwise known as "JAWS," is currently the most popular, separately purchased and downloaded screen-reading software program available for a Windows computer.

23.     For blind and visually-impaired users of Apple operating system-enabled computers and devices, the screen-reading software available and built into all Apple products is VoiceOver. Apple's devices, including the iPhone, have the VoiceOver program integrated into their iOS operating system for use by blind and visually-impaired users, including Plaintiff.

24.     For screen-reading software to function, the information on a website must be capable of being rendered into meaningful text so it may be read back to the user and then the user can navigate a website and various web pages within a website using their keyboard.

25.     Similarly, for screen-reading software to function on a smartphone, the information contained on a mobile application must be capable of being rendered into meaningful text so it may be read back to the user as they are moving their fingers over their smartphone's screen in order to navigate an app.

26.     If the website or mobile app content is not capable of being rendered

into meaningful text, the blind or visually-impaired user is not able to access and navigate the same content on a website or mobile app that is available to sighted users.

27.     The ADA specifically provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to) or operates a place of public accommodation." 42 U.S.C. §12182(a); 28 C.F.R. §36.201(a). The ADA further requires that a public accommodation provide accessible electronic and information technology as auxiliary aids and services.   *See* 28 C.F.R. §36.303(a), (b) and (c)(ii).

28.     Commercial websites and mobile apps that are not accessible for blind and visually-impaired individuals using screen-readers and keyboards only, violate this basic mandate of the ADA. *See National Federation of the Blind v. Target Corp.*, 452 F. Supp. 2d 946 (N.D. Cal. 2006).

29.     The Department of Justice (the "DOJ") has consistently stated its view that the ADA's accessibility requirements apply to websites belonging to private companies. *See, e.g., Applicability of the Americans with Disabilities Act (ADA) to Private Internet Sites: Hearing before the House Subcommittee on the Constitution of the House Committee on the Judiciary*, 106th Cong., 2d Sess. 65-010 (2000) ("It

is the opinion of the Department of Justice currently that the accessibility requirements of the Americans with Disabilities Act already apply to private Internet Web sites and services."); 75 Fed. Reg. 43460-01 (July 6, 2010) ("The Department believes that title III reaches the Web sites of entities that provide goods or services that fall within the 12 categories of 'public accommodations,' as defined by the statute and regulations."). Thus, Defendant is on notice that the ADA's general mandate applies to its website accessibility. *See Fortyune v. City of Lomita*, 766 F.3d 1098, 1102 (9th Cir. 2014); *Reich v. Mont. Sulphur & Chem. Co.*, 32 F.3d 440, 444–45 (9th Cir. 1994).

## DEFENDANT'S FAILURE TO MAKE ITS WEBSITE AND MOBILE APP ACCESSIBLE AND PLAINTIFF'S ATTEMPTS TO ACCESS

30.     Defendant offers the commercial website, McDonalds.com and its McDonald's Mobile App to the public.

31.     The website and Mobile App offer features which should allow all consumers to access the goods and services which Defendant offers and should allow consumers to locate physical locations where Defendant's products may be purchased by consumers using coupons found on the mobile application and website.

32.     The goods and services offered by Defendant's website and Mobile App include, but are not limited to the following, which should allow all consumers to: find Defendant's restaurants, access menu item descriptions and

nutritional information, acquire special offers and coupons, and many other benefits related to these goods and services.

33.    Based on information and belief, it is Defendant's policy and practice to deny Plaintiff, along with other blind or visually-impaired users, access to Defendant's website and Mobile App, and to therefore specifically deny the goods and services that are offered therein and available at its restaurants.

34.    Due to Defendant's failure and refusal to remove access barriers to its website and Mobile App, Plaintiff and visually-impaired persons have been and are still being denied equal access to the numerous goods, services, and benefits offered to the public through McDonalds.com and its Mobile App.

35.    Plaintiff cannot use a computer without the assistance of screen-reading software.

36.    However, Plaintiff is a proficient user of the JAWS screen-reader and uses it to access the internet.

37.    Plaintiff has visited McDonalds.com on several separate occasions using the JAWS screen-reader.

38.    Plaintiff regularly and proficiently uses an iPhone and its built-in screen reader, VoiceOver, to access online content found on websites and mobile applications.

39.    Plaintiff attempted to use Defendant's Mobile App on his iPhone on

several separate occasions using the VoiceOver screen reader.

40.     During several separate visits to Defendant's website and mobile app, Plaintiff encountered multiple access barriers which denied Plaintiff full and equal access to the facilities, goods and services offered to the public and made available to the public on Defendant's websites.

41.     Due to the widespread access barriers Plaintiff encountered on Defendant's website and Mobile App, Plaintiff has been deterred, on a regular basis, from accessing Defendant's website and Mobile App and has prevented him from full and equal access of Defendant's goods and services.

42.     Similarly, the access barriers Plaintiff encountered on Defendant's website and Mobile App have deterred Plaintiff from visiting or locating brick-and-mortar restaurants to purchase McDonald's products and utilize coupons found on McDonald's website and Mobile App.

43.     While attempting to navigate McDonalds.com, Plaintiff encountered multiple accessibility barriers for blind or visually-impaired people that include, but are not limited to:

> a.     The home page has graphics, links, and buttons that are not labeled or are incorrectly labeled, or lack alternative text ("Alt-text"). Alt-text is invisible code embedded beneath a graphical image on a website.  Web accessibility requires that alt-text be coded with each

picture so that screen-reading software can speak the alt-text where a sighted user sees pictures. Alt-text does not change the visual presentation, but instead a text box shows when the cursor moves over the picture using the "up," "down" arrow keys or using the "tab" key on the keyboard. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics, which prevents full and equal navigation to a screen-reader user.

b.   The home page has an inaccessible slide-show. A screen-reader user cannot determine what is actually on the slide show. It lists three slides as "Slide 1", "Slide 2", and "Slide 3."

c.   The Nutrition Calculator does not add items to the meal when a screen-reader user selects "add", but when a screen-reader user checks it says there are no items added. In addition, the values for the Nutrition Calculator are not clear. The table also does not break up number values making them difficult or impossible to accurately count.  For example, the values "200", "70", and "8" in that order will be read as "two hundred seventy eight", which sounds like one number instead of three separate numbers.

d.   There are several links throughout the website that say "void (0)."

e.  The menus and sub menus have redundant coding that causes screen-readers to repeatedly state "menu sub-menu" over and over.

f.  Finding a location is not fully accessible due to the structure of the headings, the constant pop-up to urge the screen-reader user to enter e-mail and zip code to sign up for the mailing list, and finding the appropriate edit field is difficult. Once entered, the screen-reader user then needs to go back to the top and in order to what a sighted user would do using the scroll function on a mouse, the blind user must use the TAB key to do the same function and must do so, in order to find the first option, which is not listed as clickable.

g.  The website is structured in a confusing manner for screen-readers and there are cursor traps that obstruct site navigation.

44.  In 2016 and again in 2017, Plaintiff attempted to do business with Defendant by using McDonalds.com and Plaintiff encountered barriers to access the website.

45.  Similarly, in 2017, Plaintiff attempted to access Defendant's Mobile App, sought additional information about Defendant's goods and services offered, and attempted to do business with Defendant using McDonald's iOS Mobile App. Plaintiff was unable to access information contained on the Mobile App or browse the Mobile App due to accessibility barriers that made the Mobile App

inaccessible. The accessibility barriers included, but were not limited to, being unable to navigate the Mobile App at all after entering a zip code to complete registration.

46.    Despite past and recent attempts to do business with Defendant by visiting its website and Mobile App, the numerous access barriers contained on the website and Mobile App encountered by Plaintiff, have denied Plaintiff full and equal access.

47.    Plaintiff, as a result of the barriers on Defendant's website and Mobile App, continues to be deterred on a regular basis from accessing Defendant's website and Mobile App.

48.    Due to the inaccessibility of McDonalds.com and the Mobile App, blind and visually-impaired consumers, such as Plaintiff, who need screen-readers, cannot fully and equally use or enjoy the facilities, goods, and services Defendant offers to the public on its website and Mobile App.

49.    The access barriers Plaintiff encountered on Defendant's website and Mobile App have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff on a regular basis from accessing Defendant's website and Mobile App.

50.    In addition, the access barriers Plaintiff encountered on Defendant's website and Mobile App have deterred Plaintiff from visiting physical restaurants

that offer McDonald's meals.

51.     If McDonalds.com and the Mobile App were equally accessible to all, Plaintiff could independently navigate Defendant's website and Mobile App and complete a desired transaction as sighted individuals do.

52.     Having made many attempts to use Defendant's website and mobile app, Plaintiff has actual knowledge of the access barriers that make these privileges, goods and services inaccessible and independently unusable by blind and visually-impaired people.

53.     Because maintaining and providing a website and mobile app that are fully and equally accessible to all consumers would provide Plaintiff and other visually-impaired consumers with full and equal access to McDonalds.com and the Mobile App, Plaintiff alleges that McDonald's has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

    a.  Construction and maintenance of a website and Mobile App that are inaccessible to visually-impaired individuals, including Plaintiff;

    b.  Failure to construct and maintain a website and Mobile App that are sufficiently intuitive so as to be equally accessible to visually-impaired individuals, including Plaintiff; and,

    c.  Failure to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired

consumers, such as Plaintiff, as a member of a protected class.

54.     Defendant therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

55.     The ADA expressly contemplates the type of injunctive relief that Plaintiff seeks in this action.  In relevant part, the ADA requires:

> "In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities….Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy. . ." (42 U.S.C. § 12188(a)(2).)

56.     Because Defendant's website and Mobile App are not equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause its website and Mobile App to become and remain accessible, Plaintiff invokes the provisions of 42 U.S.C. § 12188(a)(2), and seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to comply with the ADA and make the website and Mobile App accessible. To do so, Defendant must utilize input from the Agreed Upon Consultant in order for Defendant to provide a website and Mobile App which will modify the website and Mobile App's functionality so as to provide effective communication about the goods, services and/or privileges offered by the website and Mobile App to screen-reader users, instead of only

providing such functionality to sighted persons.

57.     Plaintiff seeks that this permanent injunction require Defendant to cooperate with the Agreed Upon Consultant to:

    a.  Train Defendant's employees and agents who develop the McDonalds.com website and McDonald's Mobile App on accessibility and compliance with the ADA using criteria which will provide effective communication to persons who blind and use screen-readers;

    b.  Regularly check the accessibility of Defendant's website and Mobile App to maintain accessibility as required by the ADA using criteria which will provide effective communication to persons who blind and use screen-readers;

    c.  Regularly test end-user accessibility of the websites by screen-reader users to ensure that Defendant's website and Mobile App are accessible to blind and visually-impaired individuals who would access them with screen-reading technology and prove effective communication; and,

    d.  Develop an accessibility policy that is clearly disclosed on its website and Mobile App, with contact information for users to report accessibility-related problems and be provided with

meaningful resolution after Defendant has investigated and identified the accessibility-related problem.

58.    If McDonalds.com and Defendant's Mobile App were accessible to screen-reader users, Plaintiff and similarly situated blind and visually-impaired people could independently find Defendant's restaurants, access menu item descriptions and nutritional information, acquire special offers and coupons, and otherwise research Defendant's products available online and at restaurant locations.

59.    Although Defendant may currently have centralized policies regarding the maintenance and operation of its website and Mobile App, Defendant lacks a plan and policy reasonably calculated to make its website and Mobile App fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers.

60.    Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use the Defendant's websites in violation of their rights.

## COUNT I

## [VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT]

61.    Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or

helpful to state this cause of action as though fully set forth herein.

62.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*,

provides:

> "No individual shall be discriminated against on the basis of disability in the
> full and equal enjoyment of the goods, services, facilities, privileges,
> advantages, or accommodations of any place of public accommodation by
> any person who owns, leases (or leases to), or operates a place of public
> accommodation."

(42 U.S.C. § 12182(a).)

63.     The ADA requires that the place of public accommodation not

discriminate in any way in which it interacts with the public, whether by selling

products at a physical location or over a virtual location on the Internet.[1]

64.     McDonald's website, McDonalds.com is therefore a public

accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181.

65.     McDonalds.com is a service, privilege, or advantage of McDonald's

restaurants.

66.     McDonalds.com is a service that is integrated with McDonald's

restaurants.

---

[1] Chief Judge Richard Posner of the Seventh Circuit Court of Appeals stated in dicta that the core
meaning of the ADA's definition of discrimination is that the owner or operator of a facility,
"whether in physical space or in electronic space" that is open to the public, cannot exclude
disabled persons from entering the facility and using it in the same manner as do non-disabled
persons.  (*Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999) (citing *Carparts
Distrib. Ctr., Inc. v. Automotive Wholesaler's Assoc. of New England*, 37 F.3d 12, 19 (1st Cir.
1994)).

67.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.  (42 U.S.C. § 12182(b)(1)(A)(i).)

68.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. (42 U.S.C. § 12182(b)(1)(A)(ii).)

69.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

> "[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

(42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).)

70.     The acts alleged herein constitute violations of Title III of the ADA,

and the regulations promulgated thereunder.

71.    Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A).

72.    Furthermore, Plaintiff has been denied full and equal access to McDonalds.com, has not been provided services which are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons.

73.    Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct.  These violations are ongoing.

74.    Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff, requests relief as set forth below.

**WHEREFORE,** Plaintiff prays pray for judgment in his favor and against Defendant, as follows:

1.    A Declaratory Judgment that, at the commencement of this action, Defendant was in violation of the specific requirements of Title III of the ADA 42 U.S.C. § 12181 *et seq.*, and the relevant implementing regulations of the ADA, for Defendant's failure to take action that was reasonably calculated to ensure that its websites are fully and equally accessible to, and independently usable by, blind and visually-impaired

individuals;

2.    A preliminary and permanent injunction enjoining Defendant from further violations of the ADA, 42 U.S.C. § 12181 *et seq.*, with respect to its websites, McDonalds.com;

3.    A preliminary and permanent injunction requiring Defendant to take the steps necessary to make McDonalds.com readily accessible to and usable by blind and visually-impaired individuals;

4.    For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, pursuant to 42 U.S.C. § 12188(a)(1);

5.    For compensatory damages including, but not limited to, mental anguish, loss of dignity, and any other intangible injuries suffered by the Plaintiff as a result of Defendant's discrimination;

6.    For prejudgment interest to the extent permitted by law;

7.    For costs of suit; and

8.    For such other and further relief as this Court deems just and proper.

## COUNT II

## [VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT]

75.    Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or

helpful to state this cause of action as though fully set forth herein.

76.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*,

provides:

> "No individual shall be discriminated against on the basis of disability
> in the full and equal enjoyment of the goods, services, facilities,
> privileges, advantages, or accommodations of any place of public
> accommodation by any person who owns, leases (or leases to), or
> operates a place of public accommodation."

> (42 U.S.C. § 12182(a).)

77.     The ADA requires that the place of public accommodation not

discriminate in any way in which it interacts with the public, whether by selling

products at a physical location or over a virtual location on the Internet. (*See*

*Morgan v. Joint Admin. Bd.*, 268 F.3d 456, 459 (7th Cir. 2001)).

78.     McDonald's iOS Mobile App is therefore a public accommodation

within the definition of Title III of the ADA, 42 U.S.C. § 12181.

79.     McDonald's Mobile App is a service, privilege, or advantage of

McDonald's restaurants.

80.     McDonald's Mobile App is a service that is integrated with

McDonald's restaurants.

81.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful

discrimination to deny individuals with disabilities the opportunity to participate in

or benefit from the goods, services, facilities, privileges, advantages, or

accommodations of an entity.  (42 U.S.C. § 12182(b)(1)(A)(i).)

82.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. (42 U.S.C. § 12182(b)(1)(A)(ii).)

83.    Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

> "[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

(42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).)

84.    The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder.

85.    Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of

sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A).

86.    Furthermore, Plaintiff has been denied full and equal access to McDonald's mobile app, has not been provided services which are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons.

87.    Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct.  These violations are ongoing.

88.    Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff, requests relief as set forth below.

**WHEREFORE,** Plaintiff prays pray for judgment in his favor and against Defendant, as follows:

1.    A Declaratory Judgment that, at the commencement of this action, Defendant was in violation of the specific requirements of Title III of the ADA 42 U.S.C. § 12181 *et seq.*, and the relevant implementing regulations of the ADA, for Defendant's failure to take action that was reasonably calculated to ensure that its Mobile App is fully accessible to, and independently usable by, blind and visually-impaired individuals;

2.    A preliminary and permanent injunction enjoining Defendant from further violations of the ADA, 42 U.S.C. § 12181 *et seq.*, with respect

to its Mobile App;

3.  A preliminary and permanent injunction requiring Defendant to take the steps necessary to make its Mobile App readily accessible to and usable by blind and visually-impaired individuals;

4.  For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, pursuant to 42 U.S.C. § 12188(a)(1);

5.  For compensatory damages including, but not limited to, mental anguish, loss of dignity, and any other intangible injuries suffered by the Plaintiff as a result of Defendant's discrimination;

6.  For prejudgment interest to the extent permitted by law;

7.  For costs of suit; and

8.  For such other and further relief as this Court deems just and proper.

## COUNT III

### [VIOLATIONS OF THE UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51 *et seq.*]

89.  Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this third cause of action as though fully set forth herein.

90.  California Civil Code § 51 *et seq.* guarantees equal access for people with disabilities to the accommodations, advantages, facilities, privileges, and

services of all business establishments of any kind whatsoever. Defendant is systematically violating the UCRA, Civil Code § 51 *et seq*.

91. Defendant's website is a "business establishments" within the meaning of the Civil Code § 51 *et seq*. Defendant generates millions of dollars in revenue from the sale of goods through its McDonalds.com website. Defendant's website, McDonalds.com, is a service provided by Defendant that is inaccessible to patrons who are blind or visually-impaired like Plaintiff. This inaccessibility denies blind and visually-impaired patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public. Defendant is violating the UCRA, Civil Code § 51 *et seq*., by denying visually-impaired customers the goods and services provided on its website, McDonalds.com. These violations are ongoing.

92. Defendant's actions constitute intentional discrimination against Plaintiff on the basis of a disability, in violation of the UCRA, Civil Code § 51 *et seq*., because Defendant has constructed a website that is inaccessible to Plaintiff, Defendant maintains the website in an inaccessible format, and Defendant has failed to take actions to correct these barriers.

93. Defendant is also violating the UCRA, Civil Code § 51 *et seq*. because the conduct alleged herein violates various provisions of the ADA, 42 U.S.C. § 12101 *et seq*., as set forth above. Section 51(f) of the Civil Code provides

that a violation of the right of any individual under the ADA also constitutes a violation of the UCRA.

94.　　The actions of Defendant violate UCRA, Civil Code § 51 *et seq.*, and Plaintiff is therefore entitled to injunctive relief remedying the discrimination.

95.　　Plaintiff is entitled to statutory minimum damages pursuant to Civil Code § 52 for each and every offense.

96.　　Plaintiff is also entitled to reasonable attorneys' fees and costs.

**WHEREFORE,** Plaintiff prays pray for judgment in his favor and against Defendant, as follows:

1.　　A preliminary and permanent injunction enjoining Defendant from violating the UCRA, Civil Code § 51 *et seq*, with respect to its website;

2.　　A preliminary and permanent injunction requiring Defendant to take the steps necessary to make its website readily accessible to and usable by blind and visually-impaired individuals;

3.　　An award of statutory minimum damages of $4,000 per violation pursuant to § 52(a) of the California Civil Code;

4.　　For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, pursuant to California Civil Code § 52(a);

5.　　For prejudgment interest to the extent permitted by law;

6.　　For costs of suit; and

7.     For such other and further relief as this Court deems just and proper.

## COUNT IV

## [VIOLATIONS OF THE UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51 *et seq*.]

97.    Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this third cause of action as though fully set forth herein.

98.    California Civil Code § 51 *et seq.* guarantees equal access for people with disabilities to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever.  Defendant is systematically violating the UCRA, Civil Code § 51 *et seq*.

99.    Defendant's Mobile App is a "business establishment" within the meaning of the Civil Code § 51 *et seq*.  Defendant generates millions of dollars in revenue from the availability of the Mobile App, which is a service or privilege of Defendant that is inaccessible to patrons who are blind or visually-impaired, like Plaintiff.  This inaccessibility denies blind and visually-impaired patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public.  Defendant is violating the UCRA, Civil Code § 51 et seq., by denying visually-impaired customers the goods and services provided on

its Mobile App. These violations are ongoing.

100.    Defendant's actions constitute intentional discrimination against Plaintiff on the basis of a disability, in violation of the UCRA, Civil Code § 51 *et seq.*, because Defendant has constructed a Mobile App that is inaccessible to Plaintiff, Defendant maintains the Mobile App in an inaccessible format, and Defendant has failed to take actions to correct these barriers.

101.    Defendant is also violating the UCRA, Civil Code § 51 *et seq.* because the conduct alleged herein violates various provisions of the ADA, 42 U.S.C. § 12101 *et seq.*, as set forth above.  Section 51(f) of the Civil Code provides that a violation of the right of any individual under the ADA also constitutes a violation of the UCRA.

102.    The actions of Defendant violate UCRA, Civil Code § 51 *et seq.*, and Plaintiff is therefore entitled to injunctive relief remedying the discrimination.

103.    Plaintiff is entitled to statutory minimum damages pursuant to Civil Code § 52 for each and every offense.

104.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

//

//

**WHEREFORE,** Plaintiff prays pray for judgment in his favor and against Defendant, as follows:

1.     A preliminary and permanent injunction enjoining Defendant from violating the UCRA, Civil Code § 51 *et seq*, with respect to its Mobile App;

2.     A preliminary and permanent injunction requiring Defendant to take the steps necessary to make its Mobile App readily accessible to and usable by blind and visually-impaired individuals;

3.     An award of statutory minimum damages of $4,000 per violation pursuant to § 52(a) of the California Civil Code;

4.     For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, pursuant to to California Civil Code § 52(a);

5.     For compensatory damages including, but not limited to, mental anguish, loss of dignity, and any other intangible injuries suffered by the Plaintiff as a result of Defendant's discrimination;

6.     For prejudgment interest to the extent permitted by law;

7.     For costs of suit; and

8.     For such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury.

Dated: April 23, 2017                        *Respectfully submitted*,

*/s/ Rusty A. Payton*
Rusty A. Payton
Marc E. Dann
PaytonDann
115 S. LaSalle Street, Suite 2600
Chicago, Illinois 60603
(312) 702--1000
(312) 702--1000 (fax)
payton@paytondann.com
mdann@dannlaw.com
*Counsel of Record for Plaintiff*


Joseph R. Manning, Jr.
*Pro Hac Admission to be sought*
Caitlin J. Scott
*Pro Hac Admission to be sought*
4667 MacArthur Blvd, Suite 150
Newport Beach, CA 92660
Tel: (949) 200-8755
cscott@manninglawoffice.com